576 N.W.2d 861 (1998)
Barbara SPRUNK, Claimant and Appellant,
v.
NORTH DAKOTA WORKERS COMPENSATION BUREAU, Appellee, and
N.D. Grain Inspection Svc., Inc., Respondent.
Civil No. 970296.
Supreme Court of North Dakota.
April 28, 1998.
*863 Mark G. Schneider, of Schneider, Schneider & Schneider, Fargo, for claimant and appellant.
Jacqueline Sue Anderson, Special Assistant Attorney General, Nilles, Hansen & Davies, Fargo, for appellee.
MARING, Justice.
[¶ 1] Barbara Sprunk appealed a judgment affirming the Workers Compensation Bureau's denial of permanent partial impairment benefits. We affirm.

I
[¶ 2] Sprunk injured her head, neck, back, and left knee in a fall while working on December 19, 1995. Sprunk filed a claim for benefits. The Bureau accepted liability and awarded benefits. On August 12, 1996, the Bureau issued an order denying a permanent partial impairment (PPI) award because Sprunk had not reached maximum medical improvement (MMI).
[¶ 3] Sprunk requested reconsideration. The Bureau appointed an administrative law judge (ALJ) to conduct a hearing. The parties agreed to submit the matter to the ALJ on briefs and exhibits presented by the parties, without a formal evidentiary hearing. The ALJ found, among other things: "The greater weight of the evidence indicates that Claimant has not yet reached maximum medical improvement." On December 24, 1996, the ALJ recommended affirmance of the Bureau's August 12, 1996, order denying PPI benefits. The Bureau adopted the ALJ's recommended order as the Bureau's final order. Sprunk appealed to the district court. The district court affirmed the Bureau's order and Sprunk appealed to this court.

II
[¶ 4] On appeal, we review the Bureau's decision, not the district court's decision. Hopfauf v. North Dakota Workers Comp. Bureau, 1998 ND 40, ¶ 8, 575 N.W.2d 436. Under N.D.C.C. §§ 28-32-19 and 28-32-21, we affirm an administrative agency decision unless the findings of fact are not supported by a preponderance of the evidence, the conclusions of law are not supported by the findings of fact, the decision is not supported by the conclusions of law, the decision is not in accordance with the law or violates the appellant's constitutional rights, or the agency's rules or procedures deprived the appellant of a fair hearing. Flink v. North Dakota Workers Comp. Bureau, 1998 ND 11, ¶ 8, 574 N.W.2d 784. "Our review of an administrative agency's findings of fact is limited to determining if a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence from the entire record." Feist v. North Dakota Workers Comp. Bureau, 1997 ND 177, ¶ 8, 569 N.W.2d 1.
[¶ 5] Sprunk contends we must construe workers compensation statutes liberally in favor of injured workers, as we have in the past. See, e.g., Feist, 1997 N.D. 177, ¶ 8, 569 N.W.2d 1. In 1995, the following language was added to N.D.C.C. § 65-01-01: "A civil action or civil claim arising under this title, which is subject to judicial review, must be reviewed solely on the merits of the action or claim. This title may not be construed liberally on behalf of any party to the action or claim." 1995 N.D. Laws, Ch. 605, § 1. Relying on N.D.C.C. § 1-02-01,[1] Sprunk contends *864 we must continue to construe workers compensation statutes liberally. However, under N.D.C.C. § 1-02-07,[2] a special provision like N.D.C.C. § 65-01-01 will ordinarily prevail in a conflict with a general provision like N.D.C.C. § 1-02-01. Furthermore, whether or not we construe a workers compensation statute liberally, under N.D.C.C. § 65-01-11, "a claimant has the burden of proving he or she is entitled to participate in the workers compensation fund." Feist, 1997 ND 177, ¶ 8, 569 N.W.2d 1.

III
[¶ 6] The Bureau moved to strike three documents from the appendix filed by Sprunk: a November 20, 1996, report by John H. Beaumier, M.D.; a December 3, 1996, letter from the Bureau to Dr. Beaumier; and Dr. Beaumier's December 13, 1996, response to the Bureau's letter. The documents were contained in the Bureau's claim file, but were not presented to the ALJ. The Bureau did not include the documents in the certificate of record it filed with the district court under N.D.C.C. § 28-32-17. Sprunk presented the documents to the district court in an addendum to the record. The district court found the addendum "contains evidence that was not considered by the Bureau or by [ALJ] Thomas. As a result, it will not be considered on appeal." Sprunk included the three documents in the appendix she filed in her appeal to this court. The Bureau contends Sprunk violated Rule 30(a), N.D.R.App.P., which provides, in part: "Only items actually in the record may be included in the appendix."
[¶ 7] "When there has been an appeal from a decision of an administrative agency, NDCC 28-32-17(2) requires the administrative agency to `prepare and file ... the original or a certified copy of the entire record of proceedings before the agency, or an abstract of the record as may be agreed upon and stipulated by the parties.'" Sowatzki v. North Dakota Workers Comp. Bureau, 1997 ND 137, ¶ 15, 567 N.W.2d 189. Unless otherwise provided by statute, "the agency record constitutes the exclusive basis for administrative agency action and judicial review of an administrative agency action." N.D.C.C. § 28-32-17(5). Under N.D.C.C. § 28-32-19, the district court "must review an appeal from the determination of an administrative agency based only on the record filed with the court."
[¶ 8] When the Bureau filed its certificate of record on appeal with the district court, N.D.C.C. § 28-32-17(4) specified the contents of an agency record:
The agency record of the proceedings, as applicable, must consist of only the following:
a. The complaint, answer, and other initial pleadings or documents.
b. Notices of all proceedings.
c. Any prehearing notices, transcripts, documents, or orders.
d. Any motions, pleadings, briefs, petitions, requests, and intermediate rulings.
e. A statement of matters officially noticed.
f. Offers of proof and objections and rulings thereon.
g. Proposed findings, requested orders, and exceptions.
h. The transcript of the hearing prepared for the person presiding at the hearing, including all testimony taken, and any written statements, exhibits, reports, *865 memoranda, documents, or other information or evidence considered before final disposition of proceedings.
i. Any recommended or proposed order, recommended or proposed findings of fact and conclusions of law, final order, final findings of fact and conclusions of law, or findings of fact and conclusions of law or orders on reconsideration.
j. Any information considered pursuant to section 28-32-07.
k. Matters placed on the record after an ex parte communication.
The Bureau argues the documents included by Sprunk were not considered by the Bureau or the ALJ and they are, therefore, not part of the record on appeal. Sprunk argues the documents were in the Bureau's file and were part of the record of proceedings.
[¶ 9] The Bureau's view that the challenged documents were not part of the record because the Bureau and the ALJ did not consider them is too broad:
[T]he "record of proceedings before the agency" consists of a wide range of documents, and, contrary to the Department's argument, is not limited to documents presented as a result of a formal hearing. Rather, the "agency record of proceedings" may include information not presented at a formal hearing. N.D.C.C. §§ 28-32-17(4)(j); 28-32-07.
Bashus v. North Dakota Dep't of Human Svcs., 519 N.W.2d 296, 298 (N.D.1994). Sprunk's view that the challenged documents were part of the record because they were in the Bureau's claim file is also too broad because Sprunk failed to properly present them to the district court. N.D.C.C. § 28-32-18 provides a method for getting additional evidence into the record on appeal in the district court:
If an application for leave to offer additional testimony, written statements, documents, exhibits, or other evidence is made to the court in which an appeal from a determination of an administrative agency is pending, and it is shown to the satisfaction of the court that the additional evidence is relevant and material and that there were reasonable grounds for the failure to offer the evidence in the hearing or proceeding, or that the evidence is relevant and material to the issues involved and was rejected or excluded by the agency, the court may order that the additional evidence be taken, heard, and considered by the agency on terms and conditions as the court may deem proper. After considering the additional evidence, the administrative agency may amend or reject its findings of fact, conclusions of law, and order, and shall file with the court a transcript of the additional evidence together with its new or amended findings of fact, conclusions of law, and order, if any, which constitute a part of the record with the court.
Sprunk did not attempt to augment the record by using the procedure provided by N.D.C.C. § 28-32-18. We, therefore, conclude the challenged documents are "not part of the record on appeal," Otto v. North Dakota Workers Comp. Bureau, 533 N.W.2d 703, 705 (N.D.1995), and we will not consider them.

IV
[¶ 10] Sprunk was treated by L.J. Knauf, D.C. On July 9, 1996, Dr. Knauf opined that Sprunk reached MMI on or about May 15, 1996. Since then, other doctors opined that Sprunk had not reached MMI. Sprunk contends Dr. Knauf's opinion is controlling, as a matter of law, under either N.D.C.C. § 65-05-12[3] or § 65-05-12.2.[4] The claimant in Nemec v. North Dakota *866 Workers Comp. Bureau, 543 N.W.2d 233 (N.D.1996), made a similar argument based on N.D.C.C. § 65-05-08.1(1), which provided: "The claimant's doctor shall certify the period of temporary total disability upon request of the bureau." Nemec argued that statute "require[d] the Bureau to accept the treating doctor's opinion on disability" or "to require the claimant to change treating doctors." Id. at 238. We disagreed with Nemec's analysis of the statute:
The statute unambiguously requires only that the treating doctor must provide an opinion on disability if requested by the Bureau. It does not provide, either expressly or implicitly, that only the treating doctor may provide an opinion on disability and the Bureau is bound by that opinion.
Id. Employing a similar analysis, it is clear neither N.D.C.C. § 65-05-12 nor N.D.C.C. § 65-05-12.2 "provide[s], either expressly or implicitly, that only the treating doctor may provide an opinion on" the date a claimant reached MMI "and the Bureau is bound by that opinion." Nemec, 543 N.W.2d at 238. Under both statutes, the injured employee's doctor is to report when the employee reached MMI, but the Bureau is not bound by that opinion.
[¶ 11] N.D.C.C. § 65-01-02(26) provides: "`Permanent impairment' means the loss of or loss of use of a member of the body existing after the date of maximum medical improvement or recovery." N.D.C.C. § 65-01-02(13) provides: "`Date of maximum medical improvement' or `date of maximum medical recovery' means the date after which further recovery from, or lasting improvement to, an injury or disease can no longer reasonably be anticipated based upon reasonable medical probability."
[¶ 12] The ALJ addressed the medical evidence about whether or not Sprunk had reached MMI in detail:
6. The Claimant continued receiving chiropractic treatments by Dr. Knauf. (Exhibit 10). On April 9, 1996, Dr. Knauf referred Claimant to Dr. David Harrington for a second opinion (Exhibit 14). Dr. Harrington saw Claimant on April 10, 1996. (Exhibit 1). Dr. Harrington's clinical impression based upon an examination was that the Claimant had "sustained a musculoligamentous injury to the cervical and lumbar spine." (Id.) Dr. Harrington also stated that, "Although she is improving, she has not recovered." (Id.) Dr. Harrington recommended that claimant remain off work and that she continue to receive chiropractic therapy....
7. The Bureau initiated rehabilitation services for Claimant through CorVel. (Exhibit 2). In response to a request for information from CorVel, Dr. Knauf stated, on May 24, 1996, that "time of MMI guarded at the present." (Exhibit 3).
8. Claimant continued with her chiropractic treatments by Dr. Knauf. (Exhibit 10). Claimant again saw Dr. Harrington on June 12, 1996. (Exhibit N). Following that examination, Dr. Harrington concluded as follows:
"The patient has failed to recover. I am concerned that she may harbor a lumbar disc. Therefore, I am going to request authorization for a CAT scan...."
9. On June 25, 1996, the Bureau scheduled Claimant for an independent medical examination with Paul Davis, D.C. (Exhibit 4). That examination was conducted on July 25, 1996. Dr. Davis issued his report on July 31, 1996, concluding, in part, "MMI has not been achieved at this time. This will need to wait until further diagnostic testing." (Exhibit O).
10. On July 9, 1996, Dr. Knauf opined that Claimant reached maximum medical *867 improvement "on or about 5-15-96". (Exhibit Q). Previously on May 24, 1996, Dr. Knauf had stated that Claimant's "time of MMI guarded at present". (Exhibit 3)

* * * * * *
13. On August 14, 1996, the Bureau inquired of Dr. Harrington as to his recommendations regarding treatment. (Exhibit 7). Dr. Harrington responded as follows:
"I am writing in response to your inquiry regarding Barbara Sprunk.... Mrs. Sprunk definitely has not reached MMI at this time." (Emphasis added). (Exhibit 8).
14. On September 5, 1996, Dr. Harrington reported that Claimant underwent a CAT scan of the lumbar spine, which revealed no evidence of a herniated disc. (Exhibit 9). He further requested authorization for an MRI. (Id.)
15. Dr. Knauf sent a letter to Claimant's counsel on September 11, 1996. (Exhibit R). In that letter, although Dr. Knauf does not retract his conclusion that Claimant has reached MMI, Dr. Knauf did recommend that Claimant receive an MRI study. (Id.) In this letter, Dr. Knauf stated as follows:
"I feel that without an MRI, she will continue to suffer needlessly. Regardless of the MRI results, negative or positive, we can take the appropriate steps needed for her recovery." (Id.)
16. Claimant has now been referred to the Mayo Clinic for further evaluation, with appointments scheduled for November 11 and 12, 1996. (Exhibit 16).
Based upon those findings, the ALJ and the Bureau found: "17. The greater weight of the evidence indicates that Claimant has not yet reached maximum medical improvement." The "findings are adequate to enable us to understand the basis for" the Bureau's decision. Pleinis v. North Dakota Workers Comp. Bureau, 472 N.W.2d 459, 463 (N.D. 1991). From our review of the record, we conclude "a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence from the entire record." Feist, 1997 ND 177, ¶ 8, 569 N.W.2d 1.

V
[¶ 13] Sprunk argues the date of her injury controls her right to PPI benefits, or, alternatively, the date she reached MMI controls the vesting of her right to PPI benefits, requiring application of N.D.C.C. § 65-05-12, rather than N.D.C.C. § 65-05-12.2. The ALJ found: "The greater weight of the evidence indicates that claimant has not yet reached maximum medical improvement." The Bureau adopted that finding in ruling Sprunk was not eligible to receive a permanent partial impairment award until she reaches maximum medical improvement. Because we conclude from our review of the record that a reasoning mind could reasonably find, as the Bureau did, that Sprunk had not reached MMI, we need not decide, at this time, what date or statute governs Sprunk's right to a PPI award.
[¶ 14] The Bureau left open the question of whether or not Sprunk may be entitled to a PPI award, to be determined when she reaches MMI. Which date or statute governs Sprunk's right to a PPI award need only be determined if and when she reaches MMI and an impairment "is manifest and determined to be permanent." Gregory v. North Dakota Workmen's Comp. Bureau, 369 N.W.2d 119, 122 (N.D.1985). The question of what date or statute governs Sprunk's right to a PPI award is not ripe for review at this time.
[¶ 15] This court may not render advisory opinions. Bies v. Obregon, 1997 ND 18, ¶ 9, 558 N.W.2d 855. We may adjudicate only an actual controversy, which requires an issue that is ripe for review. Id. "An issue is not ripe for review if it depends on future contingencies which, although they might occur, necessarily may not, thus making addressing the question premature." Id. Here, Sprunk may or may not have a PPI when she reaches MMI.
*868 [¶ 16] Thus, whether we must determine what date or statute governs Sprunk's right to a PPI award depends upon a future contingency which may or may not occur. As Justice Meschke observed in a concurring opinion in In re Estate of Stuckle, 427 N.W.2d 96, 103 (N.D.1988): "Where unsettled issues are evident and are linked to those brought for review, piecemeal appeals should not be encouraged without appropriate reason." See also Gast Constr. Co., Inc. v. Brighton Partnership, 422 N.W.2d 389, 391 (N.D.1988) (the final order requirement of Rule 54(b), N.D.R.Civ.P., is designed to "deter piecemeal disposal of litigation and avoid injustice caused by unnecessary delay in adjudicating the separate claims").
[¶ 17] We conclude the question of what date or statute governs Sprunk's right to a PPI award is not ripe for review at this time and no appropriate reason exists for addressing the premature questions Sprunk has raised in this appeal.
[¶ 18] The judgment is affirmed.
[¶ 19] VANDE WALLE, C.J., and NEUMANN, SANDSTROM and MESCHKE, JJ., concur.
NOTES
[1] N.D.C.C. § 1-02-01 provides:

The rule of the common law that statutes in derogation thereof are to be construed strictly has no application to this code. The code establishes the law of this state respecting the subjects to which it relates, and its provisions and all proceedings under it are to be construed liberally, with a view to effecting its objects and to promoting justice.
[2] N.D.C.C. § 1-02-07 provides:

Whenever a general provision in a statute is in conflict with a special provision in the same or in another statute, the two must be construed, if possible, so that effect may be given to both provisions, but if the conflict between the two provisions is irreconcilable the special provision must prevail and must be construed as an exception to the general provision, unless the general provision is enacted later and it is the manifest legislative intent that such general provision shall prevail.
[3] Until repealed (N.D. Laws 1995, Ch. 624, § 2), N.D.C.C. § 65-05-12 provided, in part:

The injured employee's doctor shall report to the bureau any rating of any impairment of function as the result of the injury on the date of maximum medical improvement, except for total losses claimed under section 65-05-13.
[4] N.D.C.C. § 65-05-12.2(5), which was enacted in 1995 (N.D. Laws 1995, Ch. 624, § 1), provides, in part:

An injured employee is not eligible for an evaluation for permanent impairment until the employee is at maximum medical improvement. The injured employee's doctor shall report to the bureau the date an employee has reached maximum medical improvement and any evidence of impairment of function the injured employee has after that date.
As we noted in Feist v. North Dakota Workers Comp. Bureau, 1997 ND 177, ¶ 13 n. 3, 569 N.W.2d 1: "The 1995 legislation was referred and it was approved in the June 11, 1996, primary election. N.D. Sess. Laws. ch. 566. It took effect thirty days later. N.D. Const., Art. III, § 8."